JOHN J. URIBE, ESQ. (SBN: 196720)
    uribelaw@hotmail.com
LAW OFFICES OF JOHN J. URIBE
A Professional Law Corporation
Post Office Box 69276
Los Angeles, California 90069
Tel: (213) 617-1300 / Fax: (213) 617-1320

Attorney for Plaintiff: VIJAY, professional known as
"Abrax Lorini," an individual ("VIJAY").

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DISTRICT

| | |
|---|---|
| VIJAY, professionally known as "Abrax Lorini," an individual, <br><br>     Plaintiff, <br><br>     v. <br><br> TWENTIETH CENTURY FOX FILM CORPORATION; PARAMOUNT PICTURES CORPORATION; LIGHT-STORM ENTERTAINMENT; EARTHSHIP PRODUCTIONS, INC.; WALDEN MEDIA, LLC; WALT DISNEY PICTURES; and DOES 1 through 400, inclusive, <br><br>     Defendants. | CASE NO. 2:14-cv-05404-RSWL(Ex) <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br><br> [Los Angeles Superior Court Case No. BC547906 (the "State Action")] <br><br> Time: 10:00 a.m. <br> Date:  August 26, 2014 <br> Place: Courtroom 21 <br> Judge: Hon. Ronald S.W. Lew |

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL & PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . 2

III.   STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    CLAIMS ARE NOT PREEMPTED BY SECTION 301. . . . . . . . . . . . . .

       A.    Plaintiff Not a SAG Member, Signatory or Party to CBA;
             Nor Does Plaintiff's Complaint Allege a Breach of
             Contract or the CBA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.    Claim of Judicial Admissions Untruthful: Mention of "Original
             Complaint" Is Not the "Original" Complaint in this Case but
             Instead Was a Complaint Plaintiff Had Filed in a  Former Separate
             Action That Was Dismissed, Being Improper & Misleading, with
             Defendants' Quotes and/or Citations to Law Untruthful,
             Incorrect, or Incomplete. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       C.    Plaintiff's Claims Are Not Inextricably Intertwined With Terms
             of the CBA Requiring Preemption Under Section 301. . . . . . . . . 9

       D.    Defendants' Fraudulent Concealment Not Preempted
             By Section 301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             1.    California *Labor Code* Section 921. . . . . . . . . . . . . . . . . 12

             2.    California *Labor Code* Section 970. . . . . . . . . . . . . . . . . 12

       E.    Plaintiff's Claims Alleging Defendants': (1) Violation of Plaintiff's
             Rights to Publicity & Appropriation of Likeness; and (2) Unjust
             Enrichment, Are Not Preempted By Section 301. . . . . . . . . . . . 14

V.     PLAINTIFF NOT BOUND BY ARBITRATION CLAUSE IN CBA &
       MAINTAINS HIS CONSTITUTIONAL RIGHT TO A TRIAL BY JURY. .  15

VI.    PLAINTIFF'S RIGHT OF PUBLICITY & APPROPRIATION OF
       CAUSES OF ACTION DO NOT FAIL TO STATE A CLAIM
       UPON WHICH RELIEF CAN BE GRANTED. . . . . . . . . . . . . . . . . . . 16

       A.    Plaintiff's Consent Was Lacking As to "Titanic". . . . . . . . . . . . 16

       B.    Public Interest-First Amendment Defense Without Merit. . . . . . 18

VII.   DEFENDANTS' USE OF IMAGE & LIKENESS BARRED UNDER
       EMPLOYMENT AGREEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VIII.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

-i-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aacon Contracting Co. v. Ass'n of Catholic Trade Unionists*
  276 F.2d 958 (2d Cir. 1960), *adopting* 178 F.Supp. 29 (E.D.N.Y.1959). . 5

*Aguilera v. Pirelli Armstrong Tire Corp.*
  471 U.S. 202 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Allis-Chalmers Corp. v. Lueck*
  471 U.S. 202 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11, 14

*Andrews v. Metro N. Commuter R.R. Co.*
  882 F.2d 705 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Bellefont Re Ins. Co. v. Argonaut Ins. Co.*
  757 F.2d 523 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Bowers v. Ulpiano Casal, Inc.*
  393 F.2d 421 (lst Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Browne v. McCain*
  611 F. Supp. 2d 1062 (C.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . 19

*Cal. Dental Assn. V. Cal. Dental Hygienists' Assn.*
  222 Cal.App.3d 49 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*
  690 F.2d 489 (5th Cir. 1982), *cert. denied,* 464 U.S. 932 (1983). . . . . . . 5

*Castanada v. Dura-Vent Corp.*
  648 F.2d 612 (9th Cir.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Center For Biological Diversity v. Veneman*
  394 F.3d 1108 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cervantes v. City of San Diego*
  5 F.3d 1273 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Columbia Pictures v. Miramax*
  11 F. Supp. 2d 1179 (C.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Comedy III Prod. Inc. v. Gary Saderup, Inc.*
  25 Cal.4th 387 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Conley v. Gibson*
  355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cramer v. Consolidated Freight-ways, Inc.*
  255 F.3d 683 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dahl v. Columbia Pictures Corp.*
  166 N.Y.S.2d 708 (N.Y. Super. Ct. 1957). . . . . . . . . . . . . . . . . . . . . . 17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

**TABLE OF AUTHORITIES (Continued)**

2
**Page(s)**

**Cases (Continued):**

3
*Daly v. Viacom, Inc.*
    238 F. Supp. 2d 118 (N.D. Cal. 2002). . . . . . . . . . . . . . . . . . . . . . .   17, 21
4

*Dora v. Frontline Video, Inc.*
5       15 Cal.App.3d 536 (1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

6
*Douglass v. Hustler Magazine, Inc.*
    769 F.2d 1128 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
7

*Downing v.Abercrombie & Fitch*
8       265 F.3d 994 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

9
*Dr. Seuss Enterprises, L.P. v. Penguin*
    109 F.3d 1394(9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
10

*Epstein v. Wash. Energy Co.*
11      83 F.3d 1136 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12
*Greenblatt v. Delta Plumbing & Heating Corp.*
    68 F.3d 561 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
13

*Guglielmi v. Spelling-Goldberg Productions*
14      25 Cal. 3d 860 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15
*Hines v. Anchor Motor Freight, Inc.*
    424 U.S. 554 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*
17      417 U.S. 249 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

18
*Humble v. Boeing Co.*
    305 F.3d 1004 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
19

*Int'l Union, Mine Workers v. Covenant Coal Corp.*
20      977 F.2d 895 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21
*Johnson v. Knowles*
    113 F.3d 1114 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
22

*Jones v. Corbis Corp.*
23      815 F. Supp. 2d 1108 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . 18

24
*King v. Allied Vision, Ltd.*
    65 F.3d 1051 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
25

*Livadas v. Bradshaw*
26      512 U.S. 107 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14-15

27
*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (Continued)**

Page(s)

**Cases (Continued):**

*Loss v. Blankenship*
    673 F.2d 942 (7th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McCabe v. Village Voice*, Inc.
    550 F. Supp. 525 (E.D. Pa. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*MGIC Indem. Corp. v. Weisman*
    803 F.2d 500 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Newton v. Thomason*
    22 F.3d 1445 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Painting & Decorating Contractors Assoc. of Sacramento v. Painters & Decorators Jr. Council of the East Bay Counties*
    707 F.2d 1067 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Serv., Hosp., Nursing Homes & Public Employees Union, Local No. 47 v. Commercial Prop. Servs., Inc.*
    755 F.2d 499 (6th Cir.), *cert. denied,* 474 U.S. 850 (1985). . . . . . . . . . . . 5

*Rogers v. Warden*
    20 Cal.2d 286 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Evening News Ass'n*
    371 U.S. 195, 200 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Stonebrae, L.P. v. Toll Bros., Inc.*
    2010 U.S. Dist. LEXIS 1199 (N.D. Cal. Jan. 7, 2010). . . . . . . . . . . . . . 8-9

*Sulton v. Wright*
    265 F.Supp. 292 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*
    368 F.3d 1053 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Tyler v. Cisneros*, 136 F.3d 603
    (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United Food & Commercial Workers Union v. Quality Plus Stores, Inc.*
    961 F.2d 904 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*
    363 U.S. 574 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Warner Bros., Inc. v. Curtis Management Group, Inc.*
    1995 WL 420043 (C.D. Cal. March 31, 1993). . . . . . . . . . . . . . . . . . . *21*

*Warner Constr. Corp. v. City of Los Angeles*
    (1970) 2 Cal.3d 285 1970. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES (Continued)

Page(s)

## Cases (Continued):

*White v. National Football League*
    92 F. Supp. 2d 918 (D. Minn. 2000)............................ 15

*Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*
    502 U.S. 93 (1991). ........................................ 6

*Xaros v. U.S. Fid. & Guar. Co.*
    820 F.2d 1176 (llth Cir. 1987). ............................. 5

## Statutes:

29 U.S.C. § 141, Labor Management Relations Act
    § 301. .................................... 1, 3-9,10-11, 14-16

29 U.S.C. § 157, National Labor Relations Act. ...................... 12

California *Labor Code*

    § 921. ................................................ 12-13
    § 923. ................................................ 12-13
    § 970. ................................................ 12-13

Federal Rules of Civil Procedure
    Rule 12(b)(6). ........................................ 3, 4, 8
    Rule 56. ................................................ 4

Federal Rules of Evidence
    Rule 201(b). ............................................ 4

## Other Authorities:

U.S. Const. Art. VII. ...................................... 15
U.S. Const. Amend. I. .................................... 18-21

Restatement (Second) of Torts § 652F cmt. b (1977). .................. 16
Restatement of Unfair Competition § 46 cmt. f. ..................... 16

W. Prosser, the Law of Torts (5th ed. 1984). ...................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# I.  <u>INTRODUCTION</u>

Plaintiff is not, never has been, and was not at any relevant times in this lawsuit a member of the Screen Actors Guild ("SAG").  Although there exists a collective bargaining agreement ("CBA"), between SAG and Defendants, Plaintiff is not a party nor signatory to the CBA, has never paid union dues, has no obligations under the CBA, and has never derived any benefits, rights, or protections from SAG or the CBA, nor was Plaintiff a "free rider" of any of the benefits, rights, or protections derived by SAG as a union for its members or through the CBA - - again, which Plaintiff was not a member. Nor did Plaintiff allege a breach of contract cause of action in his Complaint[1], let alone allege a breach of the CBA; the CBA, in this case, at best, being only tangentially related to Plaintiff's statutory and common law state claims.

Even if the Court, however, denies Plaintiff's Motion to Remand (filed July 20, 2014 and which is incorporated by referenced herein), and finds his claims preempted by Section 301 of Labor Management Relations Act ("LMRA") ("Section 301"), Defendants' conclusion that Plaintiff's Complaint is subject to binding arbitration as provided in the CBA does not follow.  Plaintiff, as a non-union member, non-signatory and non-party to the CBA, has never otherwise

---

[1]   Throughout Defendants' Motion to Dismiss is Defendants' reference to Plaintiff's "Original Complaint" that was filed in a previous separate action (i.e., 2:14-cv-02738), that was filed on February 14, 2014. [*See* Defendants' Motion to Dismiss ("MTD"), pp. 2-4, 6-8].  This case was dismissed on April 16, 2014. MTD, at p. 2, fn.3. Defendants incorrectly interject, reference, and rely on allegations made in this "Original Complaint" which was unverified on the basis that it constitutes "judicial admissions" and can be used to attack Plaintiff's Complaint in this separate action in support of their Motion to Dismiss.  MTD, pp. 6-7. Plaintiff objects to Defendants' characterization of "Original Complaint" because allegations contained therein are not a "judicial admission" (See Plaintiff's argument ante in Plaintiff's Opposition to Defendants' Motion to Dismiss), and because it is not the "original" Complaint *in this case* filed on June 6, 2014.

manifested an intent to be bound by the CBA's terms.  Plaintiff has a **constitutional right** to a trial by jury **which he has not waived**, and the Court must therefore allow Plaintiff to proceed on his claims.

## II.   <u>FACTUAL & PROCEDURAL BACKGROUND</u>

Plaintiff was at all times a *non-union* employee for Defendants on the Titanic Film. Complaint,¶26.  Although Defendants hired Plaintiff to work as an extra only in the Titanic film, he was not used as such. *Id*. at ¶¶15-16.  Rather, the film's director James Cameron spotted Plaintiff on set and directed Plaintiff to play a principal performer role in the film, namely the "Spindly Porter", opposite the unsinkable "Molly Brown" character played by Academy Award winning actress Kathy Bates. *Id*. Defendants fit Plaintiff with wardrobe and makeup for the role, with Plaintiff using his creativity and individual contribution to "bring to life" the external embodiment of the Spindly Porter in the film. *Id*. Plaintiff remained on set for 90 days and filmed additional scenes as the Spindly Porter. *Id.*

Thereafter, Defendants released and re-released the Titanic film, both domestically and internationally, and generated receipts in excess of $2,000,000,000.00. Complaint, ¶19).  In addition, Defendants produced, released, and re-released the Ghosts of the Abyss film in marketing the Titanic film further which contained scenes of Plaintiff's performance as the Spindly Porter in the Titanic film, without Plaintiff's knowledge or consent.  The Ghosts of the Abyss film generated receipts in excess of $30,000,000.00.  *Id*. at ¶23. At no time, however, was Plaintiff informed of his right to join SAG nor of possible increased compensation due to his elevated role and use of his image to include residuals and/or foreign royalties from exploitation of the films. *Id*. at ¶28

On June 14, 2014, Plaintiff filed his Complaint in the Los Angeles Superior Court.  On July 11, 2014, a Notice of Removal was filed alleging that Plaintiff's causes of action raised a question under federal law and were also pre-empted pursuant to Section 301, in that the claims required interpretation of the CBA.

On July 18, 2014, Defendants filed the instant Motion to Dismiss alleging that Plaintiff's claims are preempted by Section 301 and must be dismissed pursuant to the arbitration clause in the CBA. Defendants have also alleged that Plaintiff's right of publicity and appropriation of likeness causes of action must be dismissed because Plaintiff granted consent, that "Ghosts of the Abyss" was a documentary, otherwise barred by the First Amendment. On July 29, 2014, Plaintiff filed a Motion to Remand this action back to LA Superior Court for lack of subject matter jurisdiction because Plaintiff's claims **do not** require interpretation of the CBA and are not preempted by Section 301. Accordingly, should the Court grant Plaintiff's Motion to Remand, the instant Motion to Dismiss is moot. Should Plaintiff's Motion to Remand be denied, however, Plaintiff opposes Defendants' Motion to Dismiss on the following additional grounds.

### III.  <u>STANDARD OF REVIEW</u>

A complaint should not be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). When the legal sufficiency of a complaint's allegations is tested with a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

"Denial of leave to amend 'is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" *Thinket Ink Info. Res., Inc. v.*

///

*Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *Center For Biological Diversity v. Veneman*, 394 F.3d 1108, 1109-1114 (9th Cir. 2005).

Generally, a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Rule 12(b)(6) expressly provides that "when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." (Emphasis added.) Fed.R.Civ.P. 12(b)(6). There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a motion for summary judgment. *Lee*, 250 F.3d at 688. First, the Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Id*. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id.* at 689. Second, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, the Court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed.R. Evid. 201(b).

## IV.  CLAIMS ARE NOT PREEMPTED BY SECTION 301

### A.  Plaintiff Not a SAG Member, Signatory or Party to CBA; Nor Does Plaintiff's Complaint Allege a Breach of Contract or the CBA

Section 301 provides in relevant part:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court, . . ."

///

To assert jurisdiction under Section 301, therefore, a litigant must allege a breach of a contract between an employer and a labor organization or between labor organizations in an industry affecting commerce. There is no question that the jurisdictional requirements of Section 301 on this basis alone, has not been met in this case since the suit does not allege a breach of contract between an employer (i.e., Defendants), and a labor organization (i.e., SAG), in an industry affecting commerce; SAG and Defendants also being signatories to the CBA.

Generally, Section 301 jurisdiction has been interpreted to be limited to the actual signatories to the contract at issue.  *See, e.g., Bowers v. Ulpiano Casal, Inc.,* 393 F.2d 421, 423 (lst Cir. 1968); *Aacon Contracting Co. v. Ass'n of Catholic Trade Unionists,* 276 F.2d 958 (2d Cir. 1960), *affg and adopting* 178 F.Supp. 129, 129-30 (E.D.N.Y. 1959); *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 572 (2d Cir. 1995); *Int'l Union, Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895, 897 (4th Cir. 1992); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 500-01 (5th Cir. 1982), *cert. denied,* 464 U.S. 932 (1983); *Serv., Hosp., Nursing Homes & Public Employees Union, Local No. 47 v. Commercial Prop. Servs., Inc.,* 755 F.2d 499, 505-06 (6th Cir.), *cert. denied,* 474 U.S. 850 (1985); *Loss v. Blankenship,* 673 F.2d 942, 947-48 (7th Cir. 1982); *United Food & Commercial Workers Union v. Quality Plus Stores, Inc.,* 961 F.2d 904, 905-06 (10th Cir. 1992); *Xaros v. U.S. Fid. & Guar. Co.,* 820 F.2d 1176, 1181 (llth Cir. 1987).  Other circuits have explained, more fully and properly, that "a district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, *where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract." Commercial Prop. Servs., Inc.,* 755 F.2d at 506 (emphasis added); *accord, Greenblatt,* 68 F.3d at 572.

Section 301 jurisdiction has also been found, however, to be applicable against non-signatories to a CBA, but only if they have rights or obligations that arise from the contract itself. *See, e.g., Smith v. Evening News Ass'n,* 371 U.S. 195,

200 (1962) (**union members** can enforce their fights under CBA, emphasis added); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554 (1975) (same); *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 100-01 (1991) (**member** can bring suit under Section 301 to enforce rights created in union constitution, emphasis added); *Painting & Decorating Contractors Assoc. of Sacramento v. Painters & Decorators Jr. Council of the East Bay Counties,* 707 F.2d 1067 (9th Cir. 1983)(joint labor-management committee created by CBA to administer its terms is proper defendant in Section 301 suit).

In this case, defendants cite *Painting & Decorating Contractors, supra,* to support why this Court should assert jurisdiction over Plaintiff as a non-signatory. This case, however, is inapposite given that Plaintiff did not allege a single cause of action for breach of contract nor breach of the CBA and was not a named party in the CBA whcih was not the case in *Painting & Decorating Contractors*. There, the Ninth Circuit in *Painting & Decorating Contractors* found **that a party** (i.e., the Joint Committee), to the CBA - - although not a signatory to the CBA, was subject to Section 301 jurisdiction.  As such, *Painting & Decorating Contractors,* is fully distinguishable from Plaintiff's case.

First, all of the parties in *Painting & Decorating Contractors* - - both signatories and non-signatories, were specifically identified in the CBA not only by name, but by also relationship between and amongst each other through duties, rights, and obligations set forth in the CBA.  Here, one of the parties was the Joint Committee who unsuccessfully tried to avoid Section 301 jurisdiction by claiming it did not sign the CBA.  Second, plaintiffs sought injunctive relief for breach of the CBA.  In contrast here, Plaintiff in this case was not only **not** a signatory to the CBA between SAG and Defendants, but he was also not a named party in the CBA nor did he (given his non-member status with SAG), have any duties, rights, or obligations to the SAG or Defendants under the CBA.

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Overall, although Section 301 jurisdiction is not dependent upon the parties to the suit in terms of whether or not they are a union or an employer, or whether or not they are signatories to a CBA, jurisdiction will still only exists so long as the suit is for violation of a contract between a union and employer.  In other words, jurisdiction can only be proper under Section 301 so long as the suit is based on an alleged breach of contract between an employer and a labor organization and that resolution of the suit would be substantially focused upon and governed by the terms of the contract. *See Castanada v. Dura-Vent Corp*., 648 F.2d 612, 616 (9th Cir.1981).

In Plaintiff's case, it is without dispute that in addition to Plaintiff not being a union member, a party, or signatory to the CBA between SAG and Defendants, none of the causes of actions in Plaintiff's Complaint allege any cause of action for breach of contract, let alone any breach of contract cause of action of the CBA or between a union or an employer for there to be Section 301 jurisdiction. Accordingly, Plaintiff's Complaint and his state statutory and common law causes of action therein are not preempted under Section 301.

**B.** **Claim of Judicial Admissions Untruthful: Mention of "Original Complaint" Is Not the "Original" Complaint in this Case but Instead Was a Complaint Plaintiff Had Filed in a  Former Separate Action That Was Dismissed, Being Improper & Misleading, with Defendants' Quotes and/or Citations to Law Untruthful, Incorrect, or Incomplete.**

True, Plaintiff filed a separate lawsuit against Defendants which he ultimately voluntary dismissed in whole thereby terminating the case.  The complaint filed in that dismissed case was *unverified* and is what Defendants are improperly referring to in its Motion to Dismiss (in this case), as being Plaintiff's "Original Complaint." *See* MTD, pp. 2, 6, and 8.  However, that complaint **is not** the "original complaint" in this case.  It is only the "original" complaint in that case which was dismissed on April 16, 2014 - - not this case. As such, reliance by Defendants on *Bellefont Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985), *Andrews v. Metro N. Commuter R.R. Co.,* 882 F.2d 705, 707 (2d Cir.

–7–

1985) *Sulton v. Wright*, 265 F.Supp. 2d 292, 295 (S.D.N.Y. 2003), *Stonebrae, L.P. v. Toll Bros., Inc*. 2010 U.S. Dist. LEXIS 1199, *23-24 (N.D. Cal. Jan. 7, 2010), and *Cal. Dental Assn. V. Cal. Dental Hygienists' Assn*., 222 Cal.App.3d 49, 53 (1990), are without merit in having Plaintiff's unverified complaint filed in an earlier filed and dismissed case considered or qualified as "judicial admissions" for use in the current case here. Moreover, quotes cited by Defendants in these cases are untruthful, incorrect, and/or incomplete as set forth below:

> For instance, Defendants cited *Bellefont* as:

> "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound."

MTD, at p. 6, lns. 22-23.  The full and correct cite of *Bellefont* , however, is:

> "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound ***throughout the course of the proceeding***."

*Bellefont, supra* (emphasis added on that part of the cite Defendants left out).  In reviewing this Second Circuit case, the complaint at issue had not been dismissed but instead had been amended several times throughout course of the case.

Similarly, in another case, this one also from the Second Circuit, i.e., *Andrews*, defendants there wanted to introduce to the jury as judicial admissions, plaintiff's original and "certified" complaint in ongoing proceedings for purposes of comparing it to a later filed and amended complaint showing a new cause of action after a 1-1/2 years of litigation. *See generally*, *Andrews, supra*. Appallingly, in Defendants' cite to *Sulton* - - being also a Second Circuit case, Defendants quote of *Sulton* was incomplete as follows:

> 'Thus "[a]dmissions in earlier complaints remain binding . . . the Court may consider them on a motion to dismiss . . . ."

MTD, at p. 6, lns. 26-28.In actuality, however, the quote in *Sulton* stated:

> "Admissions in earlier complaints remain binding ***when a plaintiff files subsequent pleadings***. See *Andrews v. Metro N. C.R. Co.*, 882 F.2d 705, 707 . . .. As such, the Court may consider them on a motion to dismiss under Rule 12(b)(6)." [Citations omitted.]

*Sulton, supra* (emphasis added on omitted part of quote). Also, like in the *Andrews* case that the *Sulton* court cited, *Sulton* was a case that ***had never been dismissed*** with judicial admissions considered and made in light of amended complaints made throughout ongoing proceedings.

Lastly, in Defendants' cite to *Cal. Dental Association*, Defendants not only failed to identify the quote has having been made in that case's opinion in the form of a footnote, but they also deliberately omitted the full quote.  Here, Defendants cited *Cal. Dental Association* as:

> "a plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments".

MTD, at p. 7, lns. 5-6.  However, the full and correct quote was:

> "FN 1. In evaluating the sufficiency of this complaint following the sustaining of a general demurrer without leave to amend, we follow familiar rules. [Citations omitted.] We also heed (although not nearly so significant to this case as respondents urge) the rule that a plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, ***in a superseding, amended pleading.*** " [Citations omitted.]

*Cal. Dental Assoc., supra* (emphasis added on part of omitted quote).

In is undisputed that there was no superseding, amending pleadings filed in Plaintiff's earlier and separate case that was dismissed on April 16, 2014, as such, "judicial admissions" which Defendants' claim exist and can be used in this separate case are not such and cannot be considered by this Court and which is unsupported under *Bellefont, Andrews, Sulton, Stonebrae* or *Cal. Dental Assoc.*

## C.   Plaintiff's Claims Are Not Inextricably Intertwined With Terms of the CBA Requiring Preemption Under Section 301.

Plaintiff contends that absent Plaintiff being a SAG union member, a party, or signatory to the CBA between SAG and Defendants in the context of where Plaintiff has not allege any cause of action for breach of contract in his Complaint, let alone any breach of contract cause of action of the CBA or any breach between a union or an employer, any hypothetical connection of Plaintiff's claims to the terms of the CBA by Defendants simply to invoke Section 301 jurisdiction, is

improper and not enough to preempt Plaintiff's claims under Section 301. Here, adjudication of Plaintiff's claims - - after first getting past the unsurmountable jurisdictional hurdles of Plaintiff not being a named party or signatory of the CBA, having also not alleged any breach of contract claim or the CBA - -, must nonetheless unequivocally established as is it their burden that resolution of Plaintiff's claims require substantive interpretation of a provision of the CBA.  This burden cannot be met by creative linkage between the subject matter of the claim and the wording of a CBA provision; such being insufficient. Rather, the proffered interpretation argument must reach a reasonable level of credibility.  *Cf. Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).  But even here, the argument does not become credible simply because the court may have to consult the CBA to evaluate it.  *Id.* at 124-125 (when "the meaning of contract terms is not the subject of dispute, the bare fact that a CBA will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

Notwithstanding that Defendants cannot assert Section 301 jurisdiction in claiming preemption whereby there must be first alleged a breach of contract in order for Section 301 to even apply to begin with, Defendants assert that his state statutory and common law causes of action are nevertheless "inextricably intertwined with consideration of the terms of the labor contract." MTD, at p. 5. Plaintiff, however, disputes this assertion and contends that even if somehow this Court takes the leap that a non-member, non-signatory, and non-party to a CBA may fall under Section 301 jurisdiction, the Court must still find that resolution of Plaintiff's causes of action require substantive consideration of the CBA's terms.

In support, Defendants cite *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), however, *Allis-Chalmers* is wholly distinguishable from Plaintiff's case.  In particular, unlike the parties in *Allis-Chalmers*, Plaintiff is not asking this Court to consider any terms of the CBA which the parties in *Allis-Chalmers* were. In addition, unlike here, all the parties (i.e., plaintiffs and defendants), were

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

signatories to the CBA at issue with the claim alleged being one for tortious breach of contract.  But even with these factors to consider, the Supreme Court did also find that "not every dispute concerning employment or **tangentially involving a provision of a collective bargaining agreement**, is pre-empted by §301 . . .." *Allis-Chalmers, supra,* at 211.

Again, in this case, Plaintiff's Complaint does not allege any breach of contract (or CBA), nor does resolution of any of Plaintiff's causes of action depend on any interpretation of the CBA. Instead, Plaintiff insists that his state statutory and common law causes of action can all be resolved in state court, with the CBA only tangentially involved – if at all, with any provision of the CBA at most subject to being merely referred to without any substantive interpretation.

**D.     Defendants' Fraudulent Concealment Not Preempted By Section 301**

Despite no allegation of such in Plaintiff's Complaint or the subject of this cause of action, Defendants summarily claim that the duty to disclose comes from the CBA.  However, the basis for this assertion comes from "unverified" allegations Plaintiff had alleged in a separate and earlier case which had been dismissed.  However, as argued *ante* in Section IV.B above, these ARE NOT "judicial admissions" for use in a different case (i.e., this case), being a wholly new case from the case dismissed despite the similarities. In this case, Defendants' duty to disclose arose independent of the CBA and arise under California law given, *inter alia*, the employer-employee relationship between the parties.

In this case, Plaintiff alleges that Defendants engaged in fraudulent concealment by not informing him of his right to more compensation for his performance as the Spindly Porter, to include residuals and/or foreign royalties, and payment for use of his image as used in entirely different film, i.e., Ghosts of the Abyss.  Defendants' duties of disclosure are based on, without limitation, California's Labor Law to include Plaintiff's right to join a union, as follows:
///

1. **California *Labor Code* Section 921**

Every promise made . . ., between any employee or prospective employee and his employer, prospective employer or any other person is ***contrary to public policy*** if either party . . . promises any of the following:

\* \* \*

(b) Not to join . . . a labor organization . . .,

\* \* \*

(Emphasis added)".

Cal. *Labor Code* §921.

2. **California *Labor Code* Section 970**

California *Labor Code* section 970 states, in pertinent part, that:

No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of ***knowingly false representations, whether spoken, written, or advertised in printed form***, concerning either:
(a) The kind, character, or existence of such work;
(b) The length of time such work will last, ***or the compensation therefor***[e]; . . ."

Cal. *Labor Code* §970.  Likewise, Section 157 of the United States *Labor Code* states, in pertinent part, that:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, . . .."

29 U.S.C. § 157. Consistent with this right, California's *Labor Code* has sought to protect this right as well. For example, California *Labor Code* section 923 sets forth the public policy of California with regard to employers and employees, which was declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize . . .. In dealing with such employers, ***the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor***, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-

-12-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

organization, and designation of representatives of his own choosing, to *negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection*." (Emphasis added).

Cal. *Labor Code* §923. There is no doubt that in exercising this right, membership in a union results in greater compensation and benefits for members.

Defendants did not disclose the full terms of employment or compensation available to include his right to join SAG. These duties along with many others are embodied in California's public policy arising from the employer-employee relationship and California *Labor Code* sections 921, 923, and 970. Each of these duties are independent of the CBA which, again, was not alleged in the Complaint. As such, Defendants reliance on *Aguilera v Pirelli Armstrong Tire Corp.,* 471 U.S. 202 (1985)*,* is misplaced since this Court can look to California law alone in evaluating Defendants' duty to disclose as alleged.

Moreover, "[i]n transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." (Fns. omitted.)"*Warner Constr. Corp. v. City of Los Angeles,* 2 Cal.3d 285, 294 (1970). Additionally, "the rule has long been settled in [California] that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.' " *Rogers v. Warden,* 20 Cal.2d 286, 289 (1942).

Of course, paramount to Defendants' duties to disclose, was Defendants'
duty to disclose Plaintiff's right to join a union, to wit, SAG which, but for
Defendants' nondisclosure (which Plaintiff contends amounted to influence,
interference, restraint, or coercion in Plaintiff's right to self-organization or
engage in other concerted activities for the purpose of collective bargaining or
other mutual aid and or protection found under, *inter alia*, California's *Labor
Code*), obstructed Plaintiff in negotiating terms and conditions of labor between
himself and Defendants - - with Defendants' promises being false and not arising
from a voluntary agreement which - - had Plaintiff had known of SAG, would
have made all the difference in the world in his employment with Defendants.

Overall, the Supreme Court has repeatedly admonished that Section 301
preemption is "not designed to trump substantive and mandatory state law
regulation of the employee-employer relationship" and "has not become a 'mighty
oak' that might supply cover to employers from all substantive aspects of state
law." *Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002), fns. omitted.
Here, the Supreme Court also cautioned that "[i]n extending the pre-emptive effect
of § 301 beyond suits for breach of contract, it would be inconsistent with
congressional intent under that section to preempt state rules that proscribe
conduct, or establish rights and obligations, independent of a labor contract."
*Allis-Chalmers,* 471 U.S. at p. 212.

**E.    Plaintiff's Claims Alleging Defendants': (1) Violation of Plaintiff's
Rights to Publicity & Appropriation of Likeness; and (2) Unjust
Enrichment, Are Not Preempted By Section 301.**

As argued *ante*, interpretation or breach of CBA was not alleged in
Plaintiff's Complaint.  Defendants cannot, therefore, merely "by interjecting a
federal questions into an action that asserts what is plainly . . . state claim[s],
transform the action into one arising under federal law, thereby selecting the
forum in which the claim shall be litigation." *Cramer v. Consolidated Freight-
ways, Inc.*, 255 F.3d 683, 691 (2001). And, again as set forth in *Livadas, supra*, at

124-125, Defendants' interjecting mere creative linkage between the subject matter of the claim and the wording of the CBA, is not enough. In looking at Defendants' arguments (MTD, at pp. 7-11), it is clear that Defendants' attempts to do such by its extraction of terms used by Plaintiff in his Complaint and comparing same to similar terms or subjects in the CBA for Section 301 preemption, is not enough.  As found by the Supreme Court in *Livadas* in providing clarification of Section 301 preemption: "[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . .. [I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . (and not whether a grievance arising from 'precisely the same set of facts' could be pursued . . .) that decides whether a state cause of action may go forward." *Id*. at pp. 123-124, fns. omitted.

## V.  PLAINTIFF NOT BOUND BY ARBITRATION CLAUSE IN CBA & MAINTAINS HIS CONSTITUTIONAL RIGHT TO A TRIAL BY JURY

Article VII of the United States Constitution guarantees Plaintiff the right to a trial by jury.  While this right may be waived by contract in certain circumstances as in a collective bargaining agreement, the party waiving this constitutional right must actually sign the contract or otherwise manifest his assent to the contract. *See e.g., United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*, 363 U.S. 574, 582 (1960) ("[f]or arbitration is a matter of contract and a party **cannot be required to submit to arbitration any dispute which he has not agreed so to submit**") (emphasis added); *White v. National Football League*, 92 F.Supp.2d 918, 923-24 (D. Minn. 2000) (the "normal contract principle" is that a "**party cannot be bound to a contract in the absence of consent**") (emphasis added).  *See also Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 258 (1974) (refusing to compel successor corporation to arbitrate pursuant to CBA in the absence of an "express or implied assumption of the agreement to arbitrate").

Defendants claim here that, because the CBA "provides for final and binding arbitration, the Court <u>must</u> dismiss the claims rather than recharacterize them as Section 301 claims." MTD, at pp. 12-13. This claim is absolutely ridiculous. As the Complaint makes clear, Plaintiff was never a SAG member and never signed nor was he a named party to the CBA. Indeed, there is not one *scintilla* of evidence in the record that suggests that Plaintiff in any way manifested his assent to be bound by the CBA. Plaintiff never paid union dues and never derived any benefits from the CBA. The idea that Plaintiff has somehow waived his constitutional right to a jury trial, on these facts, is nothing short of ludicrous. However, even if there is preemption of Plaintiff's claims, Plaintiff must be allowed to proceed on the claims and/or amend his Complaint to do so.

## VI.  PLAINTIFF'S RIGHT OF PUBLICITY & APPROPRIATION OF CAUSES OF ACTION DO NOT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.  <u>Plaintiff's Consent Was Lacking As to "Titanic"</u>

According to the Restatement of Unfair Competition, consent precludes use of another's identity from being actionable if the use "is within the scope of consent given by the holder of the right" and if the "use occurs prior to termination of the consent." Restatement of Unfair Competition § 46 cmt. f. The scope of protected conduct or usage extends to that which is reasonably considered to be within the limits of consent granted by the holder of the right. *See Id.*; *see also*, Restatement (Second) of Torts § 652F cmt. b (1977); *see* W. Prosser, the Law of Torts, at 867 (5th ed. 1984)(stating that it is reasonably clear that consent to particular conduct will prevent that conduct from constituting an actionable invasion . . . and there is no liability for any publicity appropriation within its terms."). Here, termination of consent occurs when it is made apparent to the user that the other is "no longer willing to permit the particular use." Restatement of Unfair Competition § 46 cmt.f.

The courts are clear that when consenting to use of one's likeness, one does not provide it to "all comers," but rather only to those uses which are reasonably within the boundaries of the consent granted. *Douglass v. Hustler Magazine, Inc*., 769 F.2d 1128, 1138 (7th Cir. 1985)(supporting jury's finding that defendant magazine's act of publishing nude photos of plaintiff was not within the scope of consent plaintiff had granted to a third-party magazine regarding the same pictures); *McCabe v. Village Voice*, Inc.,550 F.Supp. 525, 529 (E.D. Pa. 1982).  Of course, if the consent at issue was granted in writing, courts need only look to the terms of the document to determine whether a particular usage exceeds the scope of consent.  In the absence of a written document, courts have looked to the circumstances surrounding the grant of consent to determine the reasonable boundaries of its scope, *McCabe*, 550 F.Supp. at 529, and have construed consent in accordance with the applicable standards as understood by the holder of the right, *Dahl v. Columbia Pictures Corp*., 166 N.Y.S.2d 708, 712 (N.Y. Super. Ct. 1957); *see also King v. Allied Vision, Ltd.,* 65 F.3d 1051 (2d Cir. 1995) (involv-ing an author's claim that defendant film distribution company had violated the scope of consent derived from a court approved decree entered into by the parties).

In this case, Plaintiff does not dispute that he gave consent to be used in the filming of "Titanic." However, the consent and implied license in the use of his image and likeness in terms of his publicity rights was limited in scope by virtue of such being duly subject to an employment agreement with Defendants.  The employment agreement he had with Defendants defined the scope of his consent and license in Defendants' use of his image and likeness to that of an extra conditioned upon compensation for his work in the "Titanic" film. As set forth in his Complaint, Plaintiff had no previous theatrical motion picture experience in the entertainment or motion picture industry of business (Complaint, ¶8), to even know the difference and significance of work as either an extra or principal performer in the filming of "Titanic", only finding out later that there was a

1  difference and that through fraud and deceit, Defendants took advantage of his

2  naivete in violating his rights under California's labor laws.

3       Defendants cite to *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 113 (C.D.

4  Cal. 2011) and *Newton v. Thomason*, 22 F.3d 1445, 1461 (9th Cir. 1994), while

5  helpful in reiterating the law of implied consent in the absence of an agreement, do

6  not apply here.  In those cases, there was no employment agreement (or any

7  agreement), involved.  For example, the *Jones* case involved Jones voluntarily

8  posing before independent photographers covering premieres or shows she

9  attended - all of whom she had no employment or contract or agreement with

10  beforehand. Here, Plaintiff alleges that his employment agreement defined the

11  scope of his consent as to his rights to publicity in working on the "Titanic" film;

12  an agreement that if not in place to begin with, would not have even allowed him

13  to be on the set during filming. Accordingly, Defendants' consent defense is

14  misplaced and, if nothing else, so fact driven in its consideration as to not at all be

15  appropriate insofar as resolution by Defendants' Motion to Dismiss.

16  **B.**     **Public Interest-First Amendment Defense Without Merit**

17       Defendants used footage of Plaintiff taken in the "Titanic" film whcih

18  thereafter used in another film, i.e., "Ghosts of the Abyss" without Plaintiff's

19  knowledge, permission, or consent. While Defendants summarily classify as fact

20  that "Ghosts of the Abyss" is a documentary, Plaintiff disputes this and instead

21  classifies the film as a mere marketing film for further exploitation of the "Titanic"

22  film.  Whether the film is a documentary or not, however, is a fact issue which

23  cannot be resolved in these proceedings.  Furthermore, the issue of "public

24  interest" is not exactly as Defendants claim it to be in their claim that the film is a

25  documentary of public interest.  Indeed, while courts have authorized the use of

26  likenesses or identities when such use is of public interest, as illustrated below in

27  the following cases, there are limits to when this exception is to apply, namely,

28  that use of the likeness has to be of public interest in and of itself or contribute

1   substantially to the matter of public interest.  Both of which do not apply to use of

2   Plaintiff's likeness and image in "Ghosts of the Abyss."

3   　　　　In the case of *Browne v. McCain*, 611 F. Supp. 2d 1062 (C.D. Cal. 2009),

4   Jackson Browne sued Republican Presidential candidate, Senator John McCain,

5   along with the Republican National Committee, and others for copyright

6   infringement and related rights to publicity arising from defendants' alleged

7   improper use of his song *Running on Empty* in a campaign commercial for Senator

8   McCain.  *Id.*  In denying defendants' motion to strike Browne's complaint on the

9   grounds of public interest, the court explained that while the defense of "public

10  interest" generally bars a plaintiff's right of publicity claims when defendant's use

11  of the plaintiff's identity is a matter of public interest, such as news reporting, a

12  mere finding of "public interest" alone does not automatically exempt a defendant

13  from liability on a right of publicity claim. Here, the court found that the RNC

14  failed to show how its use of the composition *itself* was a matter of public interest.

15  　　　　In applying the reasoning in *Brown v. McCain* to Plaintiff's case,

16  Defendants must show that Plaintiff's image and likeness as used, was in and of

17  itself a matter of public interest in order for the defense of "public interest" to

18  apply. While the ship Titanic, how it was sunk, found, and was used in making the

19  "Titanic" film, can be of "public interest" as characterized in the Ghosts of the

20  Abyss film, Plaintiff's image and likeness itself was not of public interest.

21  　　　　Another case that is useful, is the case of *Downing v.Abercrombie & Fitch*,

22  265 F.3d 994 (2001).  In this case, Downing and others sued Abercrombie for

23  using photos of them in Abercrombie's catalog in violation of California's

24  common law and statutory prohibition against misappropriation of a person's name

25  and likeness.  *Id*.  In granting summary judgment for Abercrombie the district

26  court found the subject matter of "public interest" and protected by the First

27  Amendment.  In reversing the district court, however, the Ninth Circuit found

28  inapplicable the case of *Dora v. Frontline Video, Inc*., 15 Cal.App.3d 536 (1993),

which Abercrombie had relied upon (as Defendants do in this case), as their

defense.  *Id.* at 1002-1003.  Here, the Ninth Circuit found that:

> "Although the theme of Abercrombie's catalog was surfing and surf culture, a matter of public interest, the use of Appellants' names and pictures is quite different from that involved in the Dora case. In Dora, Mickey Dora's contribution to the development of the surf life-style and his influence on the sport was "the point of the program." *Id.* at 543, 18 Cal.Rptr.2d 790. Dora was depicted in the documentary because his identity directly contributed to the story about surfing which came within the protected public interest. In the current action, ***there is a tenuous relationship between Appellants' photograph and the theme presented***. Abercrombie used Appellants' photograph essentially as window-dressing to advance the catalog's surf-theme. The catalog did not explain that Appellants were legends of the sport and did not in any way connect Appellants with the story preceding it. . . . We conclude that the illustrative use of Appellants' photograph ***does not contribute significantly to a matter of the public interest*** and that Abercrombie cannot avail itself of the First Amendment defense. Accordingly, we reverse the district court's grant of summary judgment in favor of Abercrombie".

*Id.*, emphasis added.

Plaintiff submits that there is no "public interest" exception applicable to this case, with use of Plaintiff's image and likeness in terms of his publicity rights at best having only a tenuous relationship between the footage used and theme presented in the "Ghosts of the Abyss" film as a purported documentary.  Besides, Defendants nonconsensual use is commercial in nature, being merely a marketing vehicle directly connected to commercial sponsorship, promotion, and exploiting the Titanic film. Accordingly, the "public interest" defense is without merit here.

## VII.  DEFENDANTS' USE OF IMAGE & LIKENESS BARRED UNDER EMPLOYMENT AGREEMENT.

This is not the case where some film footage was captured of Plaintiff in public or where there was an unrestricted grant or assignment of publicity rights obtained by Defendants from Plaintiff in using Plaintiff's image and likeness. Instead, the footage obtained as reflected in the First and Additional Scene(s) of the Titanic Film (Complaint, ¶16), were subject to an employment agreement of a particular job for use in a particular setting only, i.e., use in the Titanic Film. Plaintiff's employment agreement with Defendants did not grant consent,

permission, or license in use of the footage in the First and/or Additional Scene(s) of the Titanic Film beyond its use in Titanic. This is apparently why it has become so critical for Defendants to have what Plaintiff was hired to do covered under the CBA which allows use of a SAG union member's image and rights to publicity in the ways Defendants used such of Plaintiff in the Titanic and Ghosts of the Abyss films. The cases cited by Defendants [i.e., *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 118 (N.D. Cal. 2002), *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal. 3d 860 (1979), and *Comedy III Prod. Inc. v. Gary Saderup, Inc*., 25 Cal.4th 387(2001)], which allow the First Amendment to trump rights of publicity or misappropriation of likeness claims, **do not** involve an employment agreement which Plaintiff claimed existed here - - and from which the image and likeness arose - -, and to which Plaintiff's has alleged his image and likeness was limited and proscribed. *See e.g., Warner Bros., Inc. v. Curtis Management Group, Inc.*, 1995 WL 420043 (C.D.Cal. March 31,1993)(Employment agreement limited use of publicity rights).

Moreover, because fair use under the First Amendment is an affirmative defense, Defendants bear the burden of proof on all factors. *Dr. Seuss Enterprises, L.P. v. Penguin*, 109 F.3d 1394, 1403 (9th Cir. 1997); *Columbia Pictures v. Miramax*, 11 F. Supp. 2d 1179, 1187 (C.D. Cal. 1998). Additionally, as to any "transformative" claims re the Ghosts of the Abyss film, Defendants here also bear the burden of proof and must offer facts that their works in use of Plaintiff's image and likeness were intended to be "transformative." Indeed, there is no indication that Defendants in this case were attempting to criticize or comment upon Plaintiff's footage as used in Ghosts of the Abyss. Nor is there any claim/evidence supporting any contention that Defendants' film provided new expression, meaning or message, associated with the footage as set forth in the First and/or Additional Scene(s) of the Titanic Film which were also used in Ghosts of the Abyss. *Dr. Seuss*, *supra*, 109 F.3d 1394. Accordingly, such defenses as alleged by Defendants are without merit warranting denial of Defendants' Motion to Dismiss.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# VIII.  <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully request that the Court deny Defendants Motion to Dismiss, and for such other and further relief as the Court deems necessary and proper.

DATED: August 5, 2014        Respectfully submitted,
                             LAW OFFICES OF JOHN J. URIBE


                             By:            /s/ John J. Uribe
                             JOHN J. URIBE
                             Attorney for Plaintiff: VIJAY

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS