1  ADAM LEVIN (SBN 156773)
       axl@msk.com
2  BRIAN M. RAGEN (SBN 275045)
       byr@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, CA  90064-1683
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Defendants WALDEN MEDIA,
   LLC and WALT DISNEY PICTURES
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11  VIJAY, professionally known as          CASE NO. 2:14-cv-05404 RSWL (Ex)
    "Abrax Lorini," an individual,
12                                          **DEFENDANTS' REPLY**
                    Plaintiff,              **MEMORANDUM IN SUPPORT OF**
13                                          **MOTION TO DISMISS [FRCP**
              v.                            **12(b)(6)]**
14
    TWENTIETH CENTURY FOX FILM
15  CORPORATION; PARAMOUNT
    PICTURES CORPORATION;                   Time:     10:00 a.m.
16  LIGHTSTORM ENTERTAINMENT,               Date:     August 26, 2014
    INC.; EARTHSHIP PRODUCTIONS,            Judge:    Hon. Ronald S. W. Lew
17  INC.; WALDEN MEDIA, LLC; WALT
    DISNEY PICTURES; and DOES 1
18  through 400 inclusive,

19                  Defendant.

20

21

22        Defendants Walden Media, LLC and Walt Disney Pictures respectfully

23  submit this Reply Memorandum in Support of Motion to Dismiss.  This Reply

24  Memorandum is joined by Defendants Twentieth Century Fox Film Corporation,

25  Paramount Pictures Corporation, Lightstorm Entertainment, Inc. and Earthship

26  Productions, Inc.   All Defendants are referred to collectively herein as

27  "Defendants."

28

Mitchell
Silberberg &
Knupp LLP

1

## **<u>TABLE OF CONTENTS</u>**

2

<u>Page</u>

3    I.    INTRODUCTION ............................................................................1

4    II.   ARGUMENT...................................................................................3

5

6          A.    Vijay Cannot Avoid His Own Factual Allegations and His
                 Original Complaint Is Properly Before The Court. ..........................3

7          B.    Vijay Has Failed to Show How His Claims for "Residuals" and
8                "Royalties" Can Be Determined Without Interpretation of the
9                CBA...............................................................................................4

10         C.    It Is Irrelevant That Vijay Was Not a Member of SAG or a Party
                 to the CBA......................................................................................7

11

12         D.    It Is Irrelevant That Vijay Has Not Alleged a Claim for Breach of
                 Contract. .........................................................................................9

13

14         E.    Vijay Is Subject to Arbitration Under the Terms of the CBA. ...........10

15         F.    Apart From Preemption, Vijay Has Not Stated a Claim for
                 Violation of His Right of Publicity or Misappropriation of His
16               Likeness...........................................................................................11

17               1.    Vijay Has No Claim as to "Titanic" Because of Consent. .......11

18               2.    Vijay Has No Claim as to "Ghosts of the Abyss" Because
19                     of the First Amendment. .........................................................13

20   III.  CONCLUSION ................................................................................16

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

CASES

4

*Allis-Chalmers Corp. v. Lueck,*
5
    471 U.S. 202 (1985)..................................................................................8

6

*Ashcroft v. Iqbal,*
7
    556 U.S. 662 (2009)..................................................................................3

8

*Astoria Federal Sav. & Loan Ass'n v. Solimino,*
9
    501 U.S. 104 (1991)..................................................................................4

10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................3

11

*Cal. Dental Assn. v. Cal. Dental Hygienists' Assn.,*
12
    222 Cal. App. 3d 49 (1990) ......................................................................3

13

*Campbell v. Acuff-Rose,*
14
    510 U.S. 569 (1994)................................................................................15

15

*Comedy III, Prod. Inc. v. Gary Saderup, Inc.,*
16
    25 Cal. 4th 387 (2001) .....................................................................13, 14

17

*Comer v. Micor, Inc.,*
18
    436 F.3d 1098 (9th Cir. 2006) ...............................................................10

19

*Conley v. Gibson,*
20
    355 U.S. 41 (1957)....................................................................................3

21

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*
    *Intermediaries,*
22
    269 F.3d 187 (3d Cir. 2001) ..................................................................10

23

*Guglielmi v. Spelling Goldberg Productions,*
24
    25 Cal. 3d 860 (1979) ......................................................................15, 16

25

*Hill v. Ralphs Grocery Co.,*
26
    896 F. Supp. 1492 (C.D. Cal. 1995)......................................................2, 7

27

*Jackson v. Southern California Gas Co.,*
    881 F.2d 638 (9th Cir. 1989) ...................................................................9

28

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

ii

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Levy v. Skywalker Sound,*
  108 Cal. App. 4th 753 (2003) ...................................................................7, 8

*Mack v. South Bay Beer Distributors,*
  798 F.2d 1279 (9th Cir. 1986) .......................................................................4

*Miller v. AT&T Network Sys.,*
  850 F.2d 543 (9th Cir. 1988) .....................................................................8, 9

*Moreau v. San Diego Transit Corp.,*
  210 Cal. App. 3d 614 (1989) ..........................................................................2

*Olguin v. Inspiration Consol. Copper Co.,*
  740 F. 2d 1468 (9th Cir. 1984) .....................................................................11

*Page v. Something Weird Video,*
  960 F. Supp. 1438 (C.D. Cal. 1996) .............................................................15

*Painting & Decorating Contrs. Ass'n of Sacramento v. Painters &*
  *Decorators Joint Comm. of the E. Bay Cntys.,*
  707 F.2d 1067 (9th Cir. 1983) ................................................................2, 8, 9

*Peterson v. EMC Telecom Corp.,*
  2010 U.S. Dist. LEXIS 59854 (D. Ariz. June 16, 2010)...............................10

*Seid v. Pacific Bell,*
  635 F. Supp. 906 (S.D. Cal. 1985) ...............................................................11

*Smith v. Evening News Ass'n,*
  371 U.S. 195 (1962).................................................................................8, 9

*State Farm Mut. Auto. Ins. Co. v. Porter,*
  186 F.2d 834. (9th Cir. 1950) ........................................................................4

*Tellez v. Pacific Gas & Elec. Co.,*
  817 F.2d 536 (9th Cir. 1987) ..........................................................................9

*Winter vs. DC Comics,* 30 Cal. 4th 881 (2003) ...............................................13, 15

## STATUTES

29 U.S.C. § 157 ................................................................................................6

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

iii

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

California Labor Code ................................................................. 5, 6
   § 921 .................................................................................. 6
   § 970 .................................................................................. 6

Labor Management Relations Act
   § 301 ................................................................... 1, 2, 4, 7, 8, 9, 11
   § 301(a) ............................................................................... 8

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

iv

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

### OTHER AUTHORITIES

Federal Rule of Civil Procedure
    Rule 12(b)(6)....................................................................................3, 4

First Amendment of the United States Constitution..........................3, 13, 14, 15, 16

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

v

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I.     INTRODUCTION

The Screen Actors Guild ("SAG") Codified Basic Agreement of 1995 (the "CBA") underlies each and every one of the claims alleged by Plaintiff Vijay ("Vijay"), and none of the arguments he makes in an effort to distance the claims from the CBA has any merit.

The thrust of Vijay's Complaint is that he was a "Principal Performer" in the motion picture "Titanic" and was wrongfully denied unspecified amounts of "residuals" and "royalties" allegedly owed all performers in that classification, as well as payments for the reuse of excerpts from "Titanic" in the later motion picture "Ghosts of the Abyss." Though Vijay's claims were originally and expressly premised on the CBA, he quickly realized that would result in preemption under Section 301 of the Labor Management Relations Act ("Section 301") and dismissed his original Complaint. He then filed the instant, virtually identical Complaint, from which he has stripped any reference to the CBA, and now argues that his claims are no longer based on the CBA. He argues instead that his claims rely upon a variety of state statutory provisions and the common law. However, he has failed to identify a single statute, regulation or decision that defines "Principal Performer," explains the circumstances under which a "Principal Performer" is entitled to receive "residuals" or "royalties" (and the basis for calculating such amounts) or specifies the circumstances under which a "Principal Performer" is entitled to payment for the reuse of excerpts of his performance.

The reason Vijay cannot find any such statutory or common law authority is that "Principal Performer" is a category of performer created by the CBA, "residuals" and "royalties" are forms of payment established by the CBA, and rights to payment for reuse of excerpts arise directly from the provisions of the CBA. As a result, Vijay's claims relating to his performance in "Titanic"—a motion picture produced pursuant to the CBA—cannot be resolved without interpretation of the CBA and are thus preempted by Section 301.

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

1

1   In a further effort to avoid preemption, Vijay makes three irrelevant factual

2   arguments:  (1) he was not a member of SAG; (2) he was not a "party" to the CBA;

3   and (3) he has not alleged any cause of action for breach of contract and Section

4   301 jurisdiction is proper only where "the suit is based on an alleged breach of

5   contract . . ."  *See* Pltf.'s Oppo. at p. 7.  Each of these has been squarely rejected by

6   the courts as a basis upon which a plaintiff can avoid the broad preemptive effect

7   of Section 301.

8   As to the first two arguments, it is well established that the preemptive

9   power of Section 301 does not depend upon whether the plaintiff was a union

10  member or a party to the collective bargaining agreement at issue.  *See Moreau v.*

11  *San Diego Transit Corp.*, 210 Cal. App. 3d 614, 622 (1989); *Painting &*

12  *Decorating Contrs. Ass'n of Sacramento v. Painters & Decorators Joint Comm. of*

13  *the E. Bay Cntys.*, 707 F.2d 1067, 1071 (9th Cir. 1983) ("The fact that [a litigant] is

14  not a party to the [collective bargaining] Agreement is immaterial."). This settled

15  legal principle is particularly compelling in this case where, despite his alleged

16  non-union status, Vijay seeks to obtain benefits available only under the CBA.[1]

17  As to the third argument, Vijay simply misstates the law.  It is not the case

18  that Section 301 preempts only causes of action for breach of contract; to the

19  contrary it is clear that "[s]tate <u>tort</u> claims that arise out of the same acts and

20  conduct which form the basis of a Section 301 . . . claim are also preempted." *Hill*

21  *v. Ralphs Grocery Co.*, 896 F. Supp. 1492, 1498  (C.D. Cal. 1995) (emphasis

22  added).

23  Finally, in addition to being preempted, Vijay's second and third causes of

24  action, for violation of his right of publicity or misappropriation of his likeness, fail

---

25  [1] Various sections of the CBA expressly apply to non-union members employed on
26  a motion picture.  *See, e.g.*, Dkt. 9-1, Exh. D at § 2 ("Union Security" clause
    permitting producers to hire non-union members under certain circumstances);
27  Dkt. 9-1, Exh. D at Schedule A, § 26 (governing the upgrade of "Background
    Performers" to "Principal Performers"); Dkt. 9-5 at Schedule X, Part I (permitting
28  the hiring of non-union "Background Performers").

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

2

1  to state a claim for other, independent reasons.  Vijay consented to Defendants' use

2  of his likeness in "Titanic," and Defendants' use of his likeness in "Ghosts of the

3  Abyss" is subject to First Amendment protection regardless of whether the movie

4  is a documentary (as is evident from the DVD) or is a promotion, as Vijay's

5  Opposition contends.

6       Accordingly, Defendants respectfully request that the Court find Vijay's

7  claims preempted in their entirety and dismiss them with prejudice.[2]

8  **II.**    **ARGUMENT**

9      **A.**   **<u>Vijay Cannot Avoid His Own Factual Allegations and His</u>**

10        **<u>Original Complaint Is Properly Before The Court.</u>**

11      As Defendants noted in their moving papers, the Court need not accept as

12 true factual allegations in a complaint that contradict statements made in a prior

13 pleading.  *See, e.g., Cal. Dental Assn. v. Cal. Dental Hygienists' Assn.*, 222 Cal.

14 App. 3d 49, 53 (1990) ("a plaintiff may not discard factual allegations of a prior

15 complaint, or avoid them by contradictory averments").  Vijay insists that the

16 Complaint he filed just months ago in a virtually identical action (*see* Dkt. 9-1,

17 Exh. A) "cannot be considered by this Court," arguing that the authority cited by

18 Defendants involved amended pleadings in the same action rather than subsequent

19 pleadings in a "separate" action.   In other words, Vijay argues that since he filed a

20 new Complaint, rather than amending his original Complaint, the Court should

21 ignore all of the detailed factual allegations he made in the original Complaint

---

22 [2] In setting forth the standard of review on a motion under Federal Rule of Civil
23 Procedure 12(b)(6), Vijay has cited pre-*Twombly/Iqbal* authority which has since
    been abrogated.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v.*
24 *Iqbal*, 556 U.S. 662 (2009).  For example, Vijay cites *Conley v. Gibson*, 355 U.S.
    41 (1957), for the proposition that "[a] complaint should not be dismissed for
25 failure to state a claim upon which relief may be granted under Federal Rule of
    Civil Procedure 12(b)(6) unless it 'appears beyond doubt that the plaintiff can
26 prove no set of facts in support of his claim which would entitle him to relief.'"
    Pltf.'s Oppo. at p. 3.  *Twombly, supra*, held that "*Conley's* 'no set of facts'
27 language has been questioned, criticized, and explained away long enough . . .  The
    phrase is best forgotten as an incomplete, negative gloss on an accepted pleading
28 standard . . ." *Twombly, supra*, 550 U.S. at 563.

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1   pertaining to the CBA and how the CBA provided the basis for his allegations that

2   he was a "Principal Performer" entitled to "residuals," "royalties" and payment for

3   reuse of excerpts containing his likeness.

4           Such a distinction has no legal significance, and would permit absurd results

5   (e.g., a plaintiff could avoid a court considering previous contradictory statements

6   by the simple expedient of dismissing and refiling rather than amending a

7   complaint). It also does not accurately reflect the law. "The decisions of [the

8   Ninth Circuit] are to the effect that statements made in a superseded pleading are

9   receivable in either the same or another suit as admissions of the party making

10  them." *State Farm Mut. Auto. Ins. Co. v. Porter*, 186 F.2d 834, 841, fn. 10. (9th

11  Cir. 1950). Moreover, it is beyond dispute that public records such as pleadings,

12  orders and other papers on file in another action may be judicially noticed on a

13  Rule 12(b)(6) motion to dismiss.  *See Mack v. South Bay Beer Distributors*, 798

14  F.2d 1279, 1281 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal*

15  *Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

16          Accordingly, Vijay's original Complaint is properly before the Court and

17  may be considered in determining whether Vijay's claims are preempted under

18  Section 301.[3]

19      **B.      Vijay Has Failed to Show How His Claims for "Residuals" and**

20              **"Royalties" Can Be Determined Without Interpretation of the**

21              **CBA.**

22          Vijay insists in his Opposition that his claims are "state statutory and

23  common law causes of action [that] can all be resolved in state court, with the

24  CBA only tangentially involved . . ."[4]   Pltf.'s Oppo. at p. 16. To make his point,

25  ───────────────

[3] As made clear in Defendants' moving papers, consideration of Vijay's original
26  Complaint is not essential to the Court's determination that Vijay's claims are
    preempted. The original Complaint merely highlights how Vijay's claims arise
27  under, and require interpretation of, the CBA.

[4] Tellingly, Vijay refuses to disavow the relevance of the CBA completely,
28  repeatedly conceding that eh CBA is at least "tangentially" involved. *See* Pltf.'s
    (...continued)

1   Vijay cites a variety of California Labor Code provisions regulating an employer's

2   relationship with its employees and attempts to stretch them to provide a legal

3   basis for his claims.   Vijay's attempt to avoid preemption on this basis is futile.

4        First, though Vijay's claims hinge upon his allegation that he was a

5   "Principal Performer" entitled to "residuals" and "royalties," he has not offered

6   any explanation of how a fact-finder could determine the merits of these

7   allegations without interpreting the CBA.  Nowhere does he cite any statutory or

8   common law authority defining "Principal Performer" or explaining the

9   circumstances under which a "Background Performer" may be upgraded to a

10  "Principal Performer."  Vijay cannot do so because "Background Performer" and

11  "Principal Performer" are terms of art created by the CBA.  *See, e.g.*, Dkt. 9-5 at

12  Schedule X, Part I, § 1(a).

13       Whether a "Background Performer" should be upgraded to a "Principal

14  Performer" requires, among other things, determining whether any dialogue

15  spoken constitutes "lines" under Schedule A, Section 26 of the CBA (which

16  governs when "[a] background actor hired as such may speak non-script lines," and

17  under what circumstances a "Background Performer" should be "adjusted," or

18  upgraded, to a different classification) (*see* Dkt. 9-2 at Schedule A, § 26) or merely

19  "normal action" under Schedule X, Part I, Section 3(b)(1) (which provides that

20  extras need not receive additional compensation for "normal action . . . portraying

21  the functions of the extra performer's assignment").  *See* Dkt. 9-5 at Schedule X,

22  Part I, § 3(b)(1).

23

24

25  (...continued)
    Oppo. at pp. 1, 11.  Yet he avoids identifying which CBA provisions are relevant
26  or describing how (even "tangentially") the CBA would affect resolution of his
    claims.  Doing so would reveal that the CBA is actually fundamental, not
27  tangential, to his claims.  In other words, Vijay has attempted (in vain) to distance
    his claims from the CBA to avoid preemption, yet he has sought to preserve his
28  ability to later rely on the CBA by claiming it is "tangentially involved."

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

5

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    Likewise, Vijay offers no authority providing for a "Principal Performer's"

2  right to "residuals" or "royalties," or explaining how they are calculated. Again,

3  his failure is unsurprising, as the CBA is the exclusive source of these rights and a

4  performer's right to this type of compensation cannot be determined independent

5  of its terms. Specifically, any fact-finder would be required to review and interpret

6  Section 5.2 of the CBA, which governs "deferred compensation, for ratable

7  distribution" and sets forth formulas for calculating such compensation under

8  various scenarios. *See* Dkt. 9-1 at Exh. D, § 5.2.

9    The Labor Code provisions cited by Vijay have no bearing on this case. For

10  one, Vijay has not alleged any causes of action for violation of those provisions.

11  Moreover, even if Vijay had alleged claims for violation of those provisions, such

12  claims would likewise require interpretation of the CBA because these Labor Code

13  provisions proscribe "knowing false representations" concerning compensation and

14  interference with the right to join the union. *See* Pltf.'s Oppo. at 12, quoting Cal.

15  Lab. Code §§ 921, 970; 29 U.S.C. § 157. Thus, any claim for violation of these

16  provisions would be preempted for the same reasons as Vijay's pleaded state law

17  claims, *i.e.*, because in order to establish any false representations and interference

18  with the right to join SAG, Vijay would first need to establish that he should have

19  been classified as a "Principal Performer," was entitled to notification of SAG

20  eligibility, and was entitled to "residuals" and "royalties," all of which are inquiries

21  governed by the CBA. Furthermore, the Labor Code provisions cited by Vijay are

22  applicable only to *employees*, but Vijay has expressly disclaimed any employment

23  relationship. Compl. at § 26 ("And although Plaintiff was hired as an extra, he did

24  not sign a work-for-hire agreement, nor was he ever an employee—having not

25  been offered nor did he ever receive any health and/or traditional employment

26  benefits from [Fox and/or Paramount].").

27    Finally, with respect to his claims for right of publicity and misappropriation

28  of likeness, Vijay's sole argument is that these claims are not preempted because

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

6

1    Defendants have "interject[ed] mere creative linkage between the subject matter of
2    the claim and the wording of the CBA." Pltf.'s Oppo. at p. 15.  However, Vijay
3    ignores the fact that Defendants' rights to use and reuse Vijay's likeness are
4    regulated extensively by the CBA, including by provisions such as Section 22
5    (entitled "Reuse of Photography or Sound Track") and Schedule B, Section 39
6    (entitled "Rights Granted to the Producer").  *See* Dkt. 9-1, Exh. D at § 22; Dkt. 9-2
7    at Schedule B, § 39.  A fact-finder cannot determine whether Defendants violated
8    Vijay's right of publicity or misappropriated his likeness without determining (1)
9    Vijay's proper classification, whether "Principal Performer," "Background
10   Performer" or otherwise, and (2) whether Defendants acted within their rights in
11   using Vijay's likeness given his classification.  Again, a fact-finder cannot make
12   these determinations without interpreting the terms of the CBA.

13          Accordingly, each of Vijay's claims requires interpretation of the CBA and
14   is therefore preempted under Section 301.[5]

15          **C.      It Is Irrelevant That Vijay Was Not a Member of SAG or a Party**
16                   **to the CBA.**

17          Vijay repeatedly asserts in his Opposition that he "is not, never has been,
18   and was not at any relevant times in this lawsuit a member of the Screen Actors
19   Guild." *See* Pltf.'s Oppo. at p. 1. But the fact that Vijay is not a member of SAG
20   (now SAG-AFTRA) has no bearing on whether his claims are preempted under
21   Section 301.  It is well established that Section 301 preempts state law causes of
22   action that would require interpretation of a collective bargaining agreement, <u>even
23   where the plaintiff is not a member of the union that is a party to the agreement</u>.
24   In *Levy v. Skywalker Sound*, 108 Cal. App. 4th 753 (2003), for example, the
25   California Court of Appeal held that a plaintiff's non-membership in a union was

26   _____

27   [5] Vijay's remaining two causes of action for unjust enrichment and unfair
     competition are entirely derivative of his other causes of action and are therefore
28   preempted for the reasons set forth above. *See Hill*, *supra*, 896 F. Supp. at 1498.

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007           **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1    immaterial where he sought the benefits of a collective bargaining agreement

2    between his employer and a union. *Id.* at 766.  What matters is whether resolution

3    of a plaintiff's claims "is substantially dependent upon analysis of the terms" of a

4    collective bargaining agreement, regardless of union membership status. *See Allis-*

5    *Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  If evaluation of a claim "is

6    inextricably intertwined with consideration of the terms of a labor contract," it is

7    preempted under Section 301. *Id.* at 213.  As discussed above, Vijay's claims for

8    "residuals" and "royalties" as a "Principal Performer," as well as his claims

9    relating to reuse of excerpts, are all dependent on analysis of the CBA.

10           Vijay is also mistaken that Section 301 requires a plaintiff to be a "party" to

11   the CBA.  "Section 301 is to be given a broad interpretation.  The fact that [a

12   litigant] is not a party to the [collective bargaining] Agreement is immaterial.

13   Section 301(a) does not contain any requirement that the parties to an action

14   brought thereunder must also be the parties to the allegedly breached contract."

15   *Painting & Decorating Contrs. Ass'n of Sacramento, supra*, 707 F.2d at 1071

16   (internal citations omitted).  This is because "it is well settled that parties in a § 301

17   action do not necessarily have to be employers or labor organizations.  The word

18   'between' in Section 301(a) refers to 'contracts' between an employer and a labor

19   organization, not to 'suits' between them." *Id.* (citing *Smith v. Evening News*

20   *Ass'n*, 371 U.S. 195, 200 (1962)).

21           Vijay's attempt to distinguish *Painting & Decorating Contrs. Ass'n of*

22   *Sacramento* is unavailing.  Vijay claims that "[t]his case . . . is inapposite given

23   that [1] Plaintiff did not allege a single cause of action for breach of contract nor

24   breach of the CBA and [2] was not a named party in the CBA."  Pltf.'s Oppo. at p.

25   6.  Vijay misconstrues the case.  As discussed more fully below, Section 301

26   preempts not only claims for breach of contract or breach of a collective bargaining

27   agreement, but rather "<u>all</u> state-law causes of action evaluation of which requires

28   interpretation of a labor contract's terms." *Miller v. AT&T Network Sys.*, 850 F.2d

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

8

543, 545 (9th Cir. 1988).  Further, as *Painting & Decorating Contrs. Ass'n of Sacramento* itself states, "Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action." *Painting & Decorating Contrs. Ass'n of Sacramento*, 707 F.2d at 1071 (emphasis added).

Finally, Vijay attempts to limit the breadth of Section 301 preemption arguing that it is "applicable against non-signatories to a CBA" only where they "have rights or obligations that arise from the contract itself." Pltf.'s Oppo. at p. 5 (citing *Smith*, *supra*, 317 U.S. at 200).  Such an argument is of no aid to Vijay here, since he indisputably is seeking to enforce rights that arise under the CBA— namely, the right to be treated as a "Principal Performer" and to be paid "residuals" and "royalties," as well as for the reuse of excerpts containing his likeness.

### D. It Is Irrelevant That Vijay Has Not Alleged a Claim for Breach of Contract.

As noted above, Vijay claims that preemption is proper only where a plaintiff has alleged a breach of contract.  This is not the law.

"[E]ven suits based on torts, rather than breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract' . . . Section 301 preempts all state-law causes of action evaluation of which requires interpretation of a labor contract's terms." *Miller*, *supra*, 850 F.2d at 545.  Based on these principles, courts have routinely found tort claims to be preempted even in the absence of a claim for breach of contract.  *See, e.g., Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 537 (9th Cir. 1987) ("parties cannot escape the preemptive effect of Section 301 by casting their claims as tort claims rather than contract claims"); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643 (9th Cir. 1989) ("the preemptive effect of § 301 must extend beyond suits alleging contract violations to encompass suits under state tort law").

E.   **Vijay Is Subject to Arbitration Under the Terms of the CBA.**

Vijay engages in much hand waving regarding Defendants' assertion that he is required to arbitrate his claims, invoking his "constitutional right to trial by jury" and claiming that requiring him to arbitrate would be "absolutely ridiculous" and "nothing short of ludicrous." Pltf.'s Oppo. at p. 16.  But enforcing the CBA's arbitration provisions is a relatively straightforward application of principles of equitable estoppel, which hold that parties who seek to take advantage of certain terms of an agreement are subject to all terms contained therein, even if they are not signatories to the agreement.

Under principles of equitable estoppel, a party is precluded "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that the contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "[N]onsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries*, 269 F.3d 187, 199 (3d Cir. 2001)). "In other words, [a] non-signatory may be subject to arbitration when it seeks to enforce the terms of an agreement or otherwise take advantage of those terms." *Peterson v. EMC Telecom Corp.*, 2010 U.S. Dist. LEXIS 59854, *14 (D. Ariz. June 16, 2010).

Here, as discussed more extensively above, Vijay is seeking to enforce the CBA and gain advantages (such as SAG membership, "residuals," "royalties" and rights of "Principal Performers" with respect to reuse of excerpts) arising exclusively under its terms.  Vijay cannot claim benefits under the CBA as a "Principal Performer" while simultaneously attempting to avoid the arbitration provisions it contains. *See* Dkt. 9-1, Exh. D at § 9.  To permit Vijay to do so would run afoul of equitable estoppel principles and would allow him to

1  selectively choose which provisions of the CBA he wishes to exploit, and which he

2  wishes to avoid.  Vijay cannot have it both ways.

3      Accordingly, if Vijay seeks to enforce the terms of the CBA, he must do so

4  through CBA-mandated arbitration.  *See Olguin v. Inspiration Consol. Copper Co.*,

5  740 F. 2d 1468, 1476 (9th Cir. 1984) ("Once it became apparent that [Plaintiff's]

6  complaint, however artfully pleaded, actually stated claims under federal law, the

7  district court correctly held that all claims had to be dismissed.  [Plaintiff's]

8  exclusive remedies lay under the grievance procedures of the collective bargaining

9  agreement . . . he therefore cannot maintain a section 301 suit independent of the

10  procedural requirements of the collective bargaining agreement."); *Seid v. Pacific*

11  *Bell*, 635 F. Supp. 906, 909  (S.D. Cal. 1985) ("When a collective bargaining

12  agreement provides that arbitration will be the exclusive remedy for employee

13  grievances, an employee may not bring an action against the employer in lieu of

14  seeking arbitration.")

15  **F.**    **<u>Apart From Preemption, Vijay Has Not Stated a Claim for</u>**

16         **<u>Violation of His Right of Publicity or Misappropriation of His</u>**

17         **<u>Likeness.</u>**

18         **1.**    **Vijay Has No Claim as to "Titanic" Because of Consent.**

19      A right of publicity claim, statutory or common law, requires that a

20  plaintiff's likeness be used without consent.  Defs.' Mot. at pp. 13-14.  Vijay

21  cannot and does not deny that consent, express or implied, is fatal to a right of

22  publicity claim.  Where, as here, a person applies to appear in a motion picture,

23  allows himself to be filmed, and does what the director asks of him on set, he has,

24  at the very least, impliedly consented to have his likeness used in the resulting

25  motion picture. That was the very purpose for Vijay being filmed.

26      Faced with that reality, Vijay grasps at straws and makes a series of

27  frivolous arguments to try to save his claim.  For example, he argues that while he

28  consented "to be used in the filming of 'Titanic,'" that consent was "subject to an

1    employment agreement with Defendants." Pltf.'s Oppo. at p. 17. The argument,

2    however, is belied by Vijay's own pleading. Nowhere in his Complaint does Vijay

3    claim to be an employee of anyone, much less have an employment agreement. To

4    the contrary, as discussed above, he expressly <u>denies</u> that he was an employee. *See*

5    Compl. at ¶ 26.

6         Even if Vijay had alleged that he had an employment agreement (and he did

7    not) and even if that employment agreement somehow purported to limit how

8    Vijay's filmed likeness could be used, Vijay never explains (in the Complaint or in

9    the Opposition) what those limits are. Whatever those imagined limits might have

10   been, they certainly would not preclude Defendants from using Vijay's filmed

11   scenes in the motion picture "Titanic." Indeed, Vijay <u>concedes</u> this elsewhere in

12   the Opposition:

13          [T]he footage [of Vijay] obtained as reflected in the First

14          and Additional Scene(s) of the Titanic Film, were subject

15          to an employment agreement of a particular job for use in

16          a particular setting only, *i.e.* <u>use in the Titanic Film</u>.

17          Plaintiff's employment agreement with Defendants did

18          not grant consent, permission or license in use of the

19          footage in the First and/or Second Scene(s) of the Titanic

20          Film <u>beyond its use in 'Titanic</u>.'"

21   Pltf.'s Oppo. at p. 20-21 (emphasis added).

22         The alleged facts that Vijay "had no previous theatrical motion picture

23   experience" and did not "know the difference" between working as an extra or

24   working as a "Principal Performer" are grossly irrelevant to the issue of whether he

25   impliedly consented to having the scenes of him that were shot for "Titanic"

26   actually appear in "Titanic." *See* Pltf.'s Oppo. at p. 17. Assuming, *arguendo*, that

27   the CBA required Vijay to be paid more than he was, this does not mean that he

28   did not consent to appear in the film. He applied for the job; he voluntarily showed

1   up on set; he knew that and why he was being filmed.  Under these circumstances,

2   he has no right of publicity or misappropriation of likeness claim as to "Titanic."

3        **2.**    **Vijay Has No Claim as to "Ghosts of the Abyss" Because of**

4        **the First Amendment.**

5        Vijay ignores the core of Defendants' First Amendment argument.

6   Defendants cited the California Supreme Court case of *Winter vs. DC Comics*, 30

7   Cal. 4th 881 (2003) which framed the relevant First Amendment issue governing a

8   right of publicity claim in the context of an expressive work as this:  "The inquiry

9   is whether the [plaintiff's] likeness is one of the raw materials from which an

10  original work is synthesized or whether the depiction or imitation of the [plaintiff]

11  is the very sum and substance of the work in question."  *Id*. at 888.

12       Despite citing more than 50 cases in his Opposition, Vijay fails to address <u>or</u>

13  <u>even mention</u> *Winter*.  That is because it is fatal to his claim.  At best, the few

14  seconds that Vijay is seen in the short clip used in "Ghosts of the Abyss" to show

15  the interior of the sunken ocean liner "is one of the raw materials" from which "the

16  original work [about James Cameron's expedition to the Titanic wreckage] is

17  synthesized."  Under no circumstances can Vijay's fleeting appearance on screen

18  be considered the "sum and substance" of the work.  The scene at issue depicts the

19  luxury of the Titanic ship, as depicted in the 1997 "Titanic" film.  Vijay, along

20  with more than a dozen other people, is visible for a few seconds in the scene.

21  None of them is singled out.  The essence of the scene is the grandeur of the ship,

22  not the people who are incidentally in the background.

23       Vijay also fails to address the decision of the California Supreme Court in

24  *Comedy III, Prod. Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387 (2001) regarding the

25  "transformative test" for protected expression applicable to a right of publicity

26  claim:

27

28  When the value of the work comes principally from some

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1  source other than the fame of the [plaintiff] – from the

2  creativity, skill, and reputation of the [defendant] – it

3  may be presumed that sufficient transformative elements

4  are present to warrant First Amendment protection.

5  *Id.* at 407.

6  None of the value of "Ghosts of the Abyss" remotely flows from the few

7  seconds that Vijay can be seen, and Vijay does not even attempt to argue

8  otherwise. Instead, Vijay tries to distinguish *Comedy III* by claiming that it did

9  "not involve an employment agreement. . ." Pltf.'s Oppo. at p. 21. But, as

10 referenced above, Vijay has never alleged the existence of an employment

11 agreement, much less identified any terms of an agreement that would prohibit use

12 of the clip in "Ghosts of the Abyss," and actually alleges that he was never an

13 employee. Compl. at ¶ 26. Moreover, Vijay argues strenuously that he is not

14 claiming that Defendants breached *any* contract. Employment agreement or not,

15 the "value" of "Ghosts of the Abyss" in no way flowed from Vijay's presence in

16 the work.

17 Vijay not only disregards that his image, which appears for just a few

18 seconds in the background, is a tiny and inconsequential component of an hour-

19 length work, but he also fails to address that the very scene in which he appears has

20 been altered and transformed to fit the theme and mood of the new work. The

21 audio from the original "Titanic" footage has been eliminated and the color of the

22 scene has been altered to create the appearance of ghosts walking through the then-

23 stately, now sunken, luxury liner. *See* Defs.' Mot. at p. 17.

24 Vijay's argument that "there is no indication that Defendants. . . were

25 attempting to criticize or comment upon Plaintiff's footage as used in "Ghosts of

26 the Abyss" is a red herring. Pltf.'s Oppo. at p. 21. That inquiry is inapposite to

27 Vijay's claims. Rather, it is applicable to copyright and trademark infringement

28 claims where the defendant asserts fair use based on parody. *See, e.g., Campbell v.*

1   *Acuff-Rose*, 510 U.S. 569, 587 (1994).  Here, Vijay's claim is for violation of his

2   right of publicity.  Expressly rejecting plaintiffs' reliance on the standards that

3   govern the protected use of a plaintiff's work under the First Amendment in a

4   copyright or trademark infringement case, the Court in *Winter* explained that with

5   respect to a right of publicity claim: "What matters is whether the work is

6   transformative, not whether it is parody or satire or caricature or serious social

7   commentary or any other specific form of expression."  *Winter*, *supra*, 30 Cal. 4th.

8   at 891; *see also Guglielmi v. Spelling Goldberg Productions*, 25 Cal. 3d 860, 869

9   (1979) (Bird J. concurring) (affirming dismissal on demurrer on the grounds that,

10   *inter alia,* defendants' use of Rudolph Valentino's name and likeness in their

11   motion picture was entitled to constitutional protection even if, as plaintiff argued,

12   the use was unnecessary).

13       Incredibly, Vijay also argues that "Ghosts of the Abyss" is not a

14   documentary, but rather is merely a commercial promotion for "Titanic" and

15   therefore not an expressive work protected by the First Amendment. *See* Pltf.'s

16   Oppo. at p. 18.  As the Court can readily determine for itself, "Ghosts of the

17   Abyss" certainly is a documentary chronicling James Cameron's 2001 expedition

18   of the sunken Titanic wreckage.  (A DVD of the film was lodged with the Motion.)

19       Even assuming, however, Vijay's position that "Ghost of the Abyss" is "a

20   mere marketing film for further exploitation of the 'Titanic' film," (*id*.) could be

21   credited as plausible at the motion to dismiss stage, it would not spare his claims.

22   As discussed above and in Defendants' moving papers, and conceded by Vijay in

23   the Opposition, Vijay consented to the use of his performance in "Titanic."

24   Because motion pictures are expressive works protected by the First Amendment,

25   where the use of the plaintiff's likeness within a motion picture is not actionable as

26   a violation of his right of publicity, use in an advertisement for that motion picture

27   is not actionable either. *See Page v. Something Weird Video*, 960 F. Supp. 1438,

28   1444 (C.D. Cal. 1996) ("Since the use of [plaintiff's] name and likeness in the film

1   was not actionable infringement of [plaintiff's] right of publicity, the use of his

2   identity in advertisements for the film is similarly not actionable") (citing

3   *Guglielmi*, *supra*, 25 Cal. 3d ay 863 (Bird J. concurring)).

4         Under the First Amendment, Vijay's second and third causes of action fail to

5   state a claim as to "Ghosts of the Abyss."

6   **III.    CONCLUSION**

7         For the reasons set forth above, Defendants respectfully request that the

8   Court find Vijay has failed to state a claim upon which relief can be granted as to

9   any of his causes of action and dismiss this action in its entirety, with prejudice.

10

11

12   DATED: August 12, 2014          MITCHELL SILBERBERG & KNUPP LLP

13

14

15                                   By: /s/Adam Levin
                                         Adam Levin
16                                       Attorneys for Defendants Walden Media,
                                         LLC and Walt Disney Pictures

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1   The undersigned hereby join in this Reply Memorandum.

2

3                         By: _Jill Glosser_____

4                               JILL GLOSSER

5                               Attorney for Defendants
                            Paramount Pictures Corporation

6

7                         By: /s/ Charles N. Shephard_____

8                               Charles N. Shephard

9                               GREENBERG GLUSKER FIELDS
                            CLAMAN & MACHTINGER LLP

10                              Attorney For Defendants Lightstorm
                            Entertainment, and Earthship

11                              Productions, Inc.

12

13

14                        By: /s/ Stephanie M. Matthews_____

15                              FOX GROUP LEGAL
                            STEPHANIE M. MATTHEWS

16                              Attorney For Defendant
                            Twentieth Century Fox Film Corporation

17

18

19

20

21                       **Attestation Regarding Signatures**

22       I, Adam Levin, attest that all signatories listed, and on whose behalf the

23   filing is submitted, concur in the filing's content and have authorized the filing.

24

25                         By: /s/Adam Levin_____
                            Adam Levin

26

27

28

Mitchell
Silberberg &
Knupp LLP

6309596.7/39275-00007

17

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

1

## PROOF OF SERVICE

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3       I am employed in the County of Los Angeles, State of California, I am over
the age of eighteen years and am not a party to this action; my business address is
4 Mitchell Silberberg & Knupp LLP, 11377 West Olympic Boulevard, Los Angeles,
CA  90064-1683.

5

6       On August 12, 2014, I served a copy of the foregoing document(s) described
as **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS [FRCP 12(b)(6)]** on the interested parties in this action at their last
7 known address as set forth below by taking the action described below:

8

| Attorneys for Defendant<br>*TWENTIETH CENTURY FOX FILM*<br>*CORPORATION* | Fox Group Legal<br>Bonnie I. Bogin, Esq.<br>Timothy S. Lykowski, Esq.<br>Stephanie M. Matthews, Esq.<br>2121 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067<br>Tel: (310) 369-1451 - Fax: (310) 969-3121 |
| --- | --- |

9

10

11

12

13    ☑  **BY MAIL**:  I placed the above-mentioned document(s) in sealed envelope(s)
addressed as set forth above, and deposited each envelope in the mail at Los
14 Angeles, California.  Each envelope was mailed with postage thereon fully
prepaid.

15

16       I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

17

18       Executed on August 12, 2014, at Los Angeles, California.

19                /s/Adam Levin
               Attorney for Defendant Attorneys for
20                WALDEN MEDIA, LLC and WALT
               DISNEY PICTURES

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6318916.1