1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  VIJAY, a professional known )    CV 14-5404 RSWL (Ex)
    as "Abrax Lorini", an       )
13  individual,                  )    **ORDER Re: DEFENDANTS'**
                                 )    **MOTION TO DISMISS [8]**
14            Plaintiff,          )
                                 )
15       v.                      )
                                 )
16  TWENTIETH CENTURY FOX FILM   )
    CORP.; PARAMOUNT PICTURES    )
17  CORP.; LIGHTSTORM            )
    ENTERTAINMENT; EARTHSHIP     )
18  PRODUCTIONS, INC.; WALDEN    )
    MEDIA, LLC; WALT DISNEY      )
19  PICTURES; AND DOES 1-400,    )
    inclusive,                   )
20                               )
                                 )
21            Defendants.        )
                                 )
22  _____ )

23       Now before the Court is Defendants' Motion to

24  Dismiss [8].  Having reviewed the papers submitted on

25  this issue, the Court hereby **DENIES IN PART** and **GRANTS**

26  **IN PART** Defendants' Motion.

27

28

                              1

1                              **I. BACKGROUND**

2   **A.   Factual Background**

3        In 1996, Plaintiff, a Los Angeles County resident
4   professionally known as "Abrax Lorini," went to a
5   casting call and was hired for sixty dollars per day to
6   be an extra in the motion picture entitled "Titanic."
7   Compl. ¶¶ 2, 15.  When Plaintiff arrived on set, the
8   film's director, James Cameron, cast Plaintiff into the
9   role of "Spindly Porter," for which Plaintiff
10  eventually spent an additional ninety days filming
11  under Cameron's direction.  Id. ¶ 16.  Plaintiff
12  contends that because he was hired as an extra, he did
13  not sign a work-for-hire agreement, nor was he an
14  employee.  Id. at 26.  He was not an industry union or
15  guild member.  Id.

16       Plaintiff's performance was included in the final
17  version of the film.  Id. ¶ 17.  From its many domestic
18  and international releases, Titanic went on to earn
19  over two billion dollars in gross for Defendants
20  Twentieth Century Fox and Paramount Pictures.  Id. ¶
21  19.  Subsequently, Defendants Earthship, Lightstorm,
22  Walden, and Disney produced a film called "Ghosts of
23  the Abyss," which also contained Plaintiff's Titanic
24  scenes.  Id. ¶ 21.  That film generated over thirty
25  million dollars in gross.  Id. ¶ 23.

26       According to Plaintiff, whether or not a film uses
27  performers who are existing and/or prospective members
28  of a union (including the Screen Actors Guild ("SAG"),

                                    2

Directors Guild of America ("DGA") or Writers Guild of
America ("WGA")) determines whether those performers
may be entitled to payments for the results of their
performances, including residual payments and foreign
royalties.  Id. ¶¶ 24-25.  Plaintiff alleges that
Defendants collectively failed to notify him of the
entitlements to compensation, to use of his image, and
to residuals and/or foreign royalties that his upgraded
"principal performance" earned him.  Id. ¶¶ 26, 28.
Accordingly, Plaintiff alleges five causes of action
under California law:  (1) Fraud by Concealment; (2)
Right of Publicity; (3) Common Law Appropriation of
Likeness; (4) Unfair Business Practices; and (5) Unjust
Enrichment.

**B.   Procedural Background**

Plaintiff filed his Complaint in Superior Court in
the County of Los Angeles on June 6, 2014.  Defendant
Twentieth Century Fox, joined by the remaining
defendants, timely removed the action to this Court
[1].  Defendants contend that Plaintiff's Complaint
raises questions under federal law and is preempted by
§ 301 of the Labor Management Relations Act ("LMRA").
Defs.' Notice of Removal at 2:27-3:7 [1].

On July 18, 2014, Defendants Walden and Disney,
joined by the remaining defendants, filed this Motion
to Dismiss [8]. Plaintiff filed an Opposition to the
Motion to Dismiss on August 5, 2014 [17].  Defendants

filed a Reply in Support of Motion to Dismiss on August 12, 2014 [19].

On July 29, 2014, Plaintiff filed this Motion to Remand Case to Los Angeles Superior Court [14]. Defendants filed an Opposition to the Motion to Remand on August 5, 2014 [16].  Plaintiff filed a Reply in Support of Motion to Remand on August 11, 2014 [18]. This Court denied Plaintiff's Motion to Remand on October 2, 2014 [22].

## II. LEGAL STANDARD

Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Dismissal can be based on a lack of cognizable legal theory or lack of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).

The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of its claim.  Swierkiewica v. Sorema N.A.,

4

534 U.S. 506, 511 (2002).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).  If dismissed, a court must then decide whether to grant leave to amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

5

### III.  DISCUSSION

**A.  Defendant's Motion to Dismiss on Section 301 Preemption Grounds**

The crux of Defendants' Motion is that resolving Plaintiff's claims requires interpretation of the Screen Actors' Guild (SAG) collective bargaining agreement (CBA), which means that Plaintiff's claims are preempted under Section 301 of the Labor Management Relations Act (LMRA).  Defendants claim that all of Plaintiff's claims are preempted by Section 301.  See Mot. 5.  In analyzing the preemptive effect of Section 301, the Supreme Court in Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962), explained that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by [state] statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy."  In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985), the Court extended this preemptive effect beyond mere contract violations, explaining that in order to prevent parties from evading the requirements of Section 301 by simply labeling their contract claims as torts, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law."  The gateway question thus

becomes whether a state law claim is independent of any right or obligation established by a collective bargaining agreement ("CBA"), or whether resolution of the state law claim is necessarily dependent upon interpretation of a CBA.  See id. at 211-13.  A state law claim that is independent of a CBA is not preempted.  Id.

In claiming that Section 301 preemption requires the Court to dismiss Plaintiff's claims, however, Defendants assert that not only does the Court have jurisdiction over Plaintiff's claims, but that preemption requires the Court to look to the SAG CBA and apply a clause that specifies arbitration as the dispute resolution mechanism.  Mot. 12:11-13:5.  It may be that Plaintiff's claims are subject to the binding arbitration clause of the SAG CBA.  Whether that is the case, however, would be prematurely decided in a 12(b)(6) motion, as courts typically decide this issue on motions for summary judgment or motions to compel arbitration.  See Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006) (upholding a district court's decision regarding on a motion to stay proceedings and to compel arbitration); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1190 (9th Cir. 1986) (concluding that under 9 U.S.C. § 4,[1] it was improper for the district

_____

[1] 9 U.S.C. 4 makes the arbitrability of claims a factual inquiry entitled to a jury or bench trial on that issue.  It states:

A party aggrieved by the alleged failure,
neglect, or refusal of another to arbitrate
under a written agreement for arbitration may
petition any United States district court
which, save for such agreement, would have
jurisdiction under Title 28, in a civil action
or in admiralty of the subject matter of a suit
arising out of the controversy between the
parties, for an order directing that such
arbitration proceed in the manner provided for
in such agreement. Five days' notice in writing
of such application shall be served upon the
party in default. Service thereof shall be made
in the manner provided by the Federal Rules of
Civil Procedure. The court shall hear the
parties, and upon being satisfied that the
making of the agreement for arbitration or the
failure to comply therewith is not in issue,
the court shall make an order directing the
parties to proceed to arbitration in accordance
with the terms of the agreement. The hearing
and proceedings, under such agreement, shall be
within the district in which the petition for
an order directing such arbitration is filed.
If the making of the arbitration agreement or
the failure, neglect, or refusal to perform the
same be in issue, the court shall proceed
summarily to the trial thereof. If no jury
trial be demanded by the party alleged to be in
default, or if the matter in dispute is within
admiralty jurisdiction, the court shall hear
and determine such issue. Where such an issue
is raised, the party alleged to be in default
may, except in cases of admiralty, on or before
the return day of the notice of application,
demand a jury trial of such issue, and upon
such demand the court shall make an order
referring the issue or issues to a jury in the
manner provided by the Federal Rules of Civil
Procedure, or may specially call a jury for
that purpose. If the jury find that no
agreement in writing for arbitration was made

court to order arbitration before the plaintiff had an
opportunity to make a factual showing as to whether an
arbitration agreement was unenforceable); Olguin v.
Inspiration Consol. Copper Co., 740 F.2d 1468, 1471
(9th Cir. 1984) (upholding a district court's (1)
refusal to remand an action because it was preempted by
Section 301 and and (2) grant of summary judgment
based on the relevant CBA's arbitration clause);
Seid v. Pac. Bell, Inc., 635 F. Supp. 906, 911 (S.D.
Cal. 1985) (dismissing the plaintiff's action on a
12(b)(6) motion as both time barred and deficiently
pleaded, not as immediately subject to arbitration);
Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1148 (9th
Cir. 1988) (upholding a district court's grant of
summary judgment based on Section 301 preemption).
Here, it is not clear that Defendants are entitled to
arbitration as a matter of law.  Plaintiff claims that
he is not subject to the arbitration provision of the
SAG CBA and resolving this issue will involve
significant factual inquiry.  Accordingly, Defendants'

---

> or that there is no default in proceeding
> thereunder, the proceeding shall be dismissed.
> If the jury find that an agreement for
> arbitration was made in writing and that there
> is a default in proceeding thereunder, the
> court shall make an order summarily directing
> the parties to proceed with the arbitration in
> accordance with the terms thereof.

9 U.S.C.A. § 4 (West).

Motion is **DENIED** on this issue.

**B.  The Misappropriation of Likeness and Right of Publicity claims**

Defendants assert independent grounds for dismissing Plaintiff's misappropriation of likeness and right of publicity claims: consent (in the case of "Titanic"), the public interest defense (in the case of "Ghosts of the Abyss,") and First Amendment protections as to both works.

Defendants assert the First Amendment defense afforded to "expressive works" in arguing that Plaintiff's right of publicity and misappropriation of likeness claims should be dismissed.  Mot. 16:12-21 (citing <u>Daly v. Viacom, Inc.</u>, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002).  "Under the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional.'"  <u>Daly v. Viacom, Inc.</u>, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (citing <u>Guglielmi v. Spelling-Goldberg Prods.</u>, 25 Cal.3d 860 (1979)).  In <u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>, 25 Cal. 4th 387, 404-05 (2001), the California Supreme Court established the means of determining whether a work should be afforded First Amendment protection:

> This inquiry into whether a work is "transformative" appears to us to be

necessarily at the heart of any judicial attempt to square the right of publicity with the First Amendment . . . . When artistic expression takes the form of a literal depiction or imitation of a celebrity[2] for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist.

The Court further explained that such transformative expression "can take many forms," but the critical determination is "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question." Id. at 406.  The reason for this test, the Court explained, is that "the right of publicity is essentially an economic right. What the right of publicity holder possesses is not a right of censorship, but a right to prevent others from misappropriating the economic value generated by the celebrity's fame through the merchandising" of the

---

[2]Subsequent decisions have explained that this defense does not only apply when the subject is a celebrity, but to non-celebrities as well.  See Daly v. Viacom, Inc., 238 F.Supp. 2d 1118, 1123 (N.D. Cal. 2002).

likeness of the celebrity.  Id. at 403 (citing Cal.
Civ. Code § 990.)

The application of this defense is normally a
question of fact.  Hilton v. Hallmark Cards, 599 F.3d
894, 910 (2009) (citing Comedy III, 25 Cal. 4th at 409
("Although the distinction between protected and
unprotected expression will sometimes be subtle, it is
no more so than other distinctions triers of fact are
called on to make in First Amendment jurisprudence.")).
Only if Defendant is entitled to the defense as a
matter of law–that is, only if no trier of fact could
reasonably conclude that Defendants' use of Plaintiff's
image was not transformative–should Defendants prevail
on their Motion.  See id. (applying the defense in a
motion to strike).  Otherwise put, if "it appears
beyond a doubt that [Plaintiff] can prove no set of
facts in support of his claim which would entitle him
to relief," his claims should be dismissed.  See Conley
v. Gibson, 355 U.S. 41, 45–46 (1957).

This Court should find that based on the
allegations in the pleadings, Plaintiff can prove no
set of facts in support of his claim that Defendants
appropriated his likeness and his right of publicity.
Under the transformative test, both "Titanic" and
"Ghosts of the Abyss" are clearly expressive works.
Plaintiff's appearance is but a minuscule portion of
each of these films, heavily edited and synthesized
with significant artistic expression.  Plaintiff was in

12

costume and make-up, being directed by the film's
director.  His scenes appeared for seconds at most in
nearly five hours of film, and even his filmed scenes
were transformed with special effects and music in the
final product.  It can hardly be said that Plaintiff's
appearance is "the very sum and substance" of either
work.  Nor can it be said that it is Plaintiff's
likeness that is generating such economic value that
Plaintiff's right to his appearance must be protected
above Defendants' First Amendment rights to use his
likeness in an expressive work.

Plaintiff claims that his "employment agreement" to
act as an extra in "Titanic" trumps the First Amendment
defense.  Opposition 20:25-21:14 (citing Warner Bros.,
Inc. v. Curtis Mgmt. Grp., Inc., 1995 WL 420043 (C.D.
Cal. March 31, 1993).  The Court should find this
distinction irrelevant to the causes of action
Plaintiff asserts.  Any agreement between two parties
as to an individual's performance may limit the use of
either party's right of publicity or use of likeness,
but no law indicates that such an agreement would
render inapplicable a constitutional defense to a tort
cause of action.  If Plaintiff's contention is that
Defendants breached an agreement to use Plaintiff's
likeness in a certain manner, then the appropriate
cause of action is for breach of contract, not right of
publicity or appropriation of likeness.

Given that Plaintiff's claims for appropriation of

13

likeness and right of publicity are based on his brief scene in two expressive works, it is unfathomable that Plaintiff would be able to amend his complaint to allege facts that would cure these two causes of action of their defects.  Accordingly, Plaintiff's second claim for right of publicity and third claim for common law appropriation of likeness are **DISMISSED WITH PREJUDICE.**  Defendants' alternative grounds for dismissing these two claims are therefore rendered moot.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**IV. CONCLUSION**

This Court therefore **GRANTS** Defendant's Motion to Dismiss Plaintiff's second claim for right of publicity and third claim for common law appropriation of likeness on the grounds that these claims are subject to First Amendment protection as expressive works. These two claims are **DISMISSED WITH PREJUDICE** because they cannot be cured by stating additional facts. Because, for the purpose of a 12(b)(6) motion, the Court must accept all allegations in the complaint as true, the Court **DENIES** Defendant's Motion to Dismiss on all other grounds, but notes that these grounds may be ripe for decision in later motions.

**IT IS SO ORDERED.**

DATED: October 27, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

15